Marshall E. Livingston, J.
This is an action for a declaratory judgment to test the constitutionality of the zoning ordinance of the Town of Pittsford, Monroe County, New York, insofar as it applies to the plaintiff’s land in said town.
Prior to the trial of the action, a motion to dismiss was made on the ground that the plaintiff has no standing at this time to bring suit because it failed to exhaust the administrative remedies available to it under the ordinance. The motion is denied.
A zoning board of appeals has no power to determine the validity of the application of the ordinance to the plaintiff, which *751 is what the plaintiff seeks (Anderson, Zoning Law and Practice in New York State, §§ 17.30, 21.07; Scarsdale Supply Co. v. Village of Scarsdale, 8 N Y 2d 325; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493; Dowsey v. Village of Kensington, 257 N. Y. 221; Western Stone Prods. Corp. v. Town Bd. of Town of Lockport, 25 A D 2d 493).
Plaintiff’s land, including both parcels “A” and “ B ”, according to a recent survey, has a total area of about 6.74 acres of land of which 1.13 acres are located in the Village of Pittsford and approximately 1.25 acres are situated in the Town of Pitts-ford on which are located two large storage tanks, a pump, loading dock and a warehouse. Approximately 4.36 acres, being the remainder of the property, are presently undeveloped. The elongated, triangular shaped property is bounded on the north by the New York State Barge Canal, on the east by New York State Highway Route 31, or Monroe Avenue in said town, and on the south by the single-track West Shore Branch of the Penn Central Railroad.
Prior to 1953 the subject premises in the town were zoned “ Industrial ”, according to Mr. Elliott, the Pittsford Town Clerk. In 1953 the 1929 ordinance was apparently amended, and the subject premises were zoned “ A Residential ”, which classification or use was carried over into the present law adopted April 8, 1963. Thus since 1953, the subject property has been occupied and part of it has been operated as a nonconforming use.
The town concedes that for more than 30 years prior to plaintiff’s acquisition of title on April 20, 1967, a portion of the premises had been used by Tidewater Oil Company and its affiliated companies for the storage and sale of fuel oil, and the premises have been so used continuously to the present time.
Shortly after plaintiff acquired title to the premises, on May 8, 1967 a verified petition was filed with the town which stated:
“ Monoco Oil Co., Inc., a domestic corporation, with its principal office and place of business at Pittsford, New York, hereby petitions this Board for an amendment to the zoning ordinance of the Town of Pittsford, New York, changing the zoning classification of approximately 3% acres of property lying south of Monroe Avenue and adjacent to the village line of the Village of Pittsford and further bounded westerly by the canal and easterly by the New York Central Railroad in the Town of Pittsford, New York, from a residential district to a commercial district and that the appropriate public hearing for such purpose be held as required by law in connection with this request.
*752 “ The property for which rezoning is sought is owned by Monoco Oil Co., Inc. and is more particularly described in an attached Schedule ‘A’.”
A public hearing was thereafter held by the defendants at • which plaintiff made known its desire to have the zoning classification of its property changed from “ A Residential” to “ Commercial ” under the 1963 ordinance then in effect.
The matter was referred to the Planning Board of the town and to the Monroe County Planning Commission for evaluation. Both of these bodies unanimously recommended that the zoning classification affecting the subject property be changed to “ Commercial ”, which presumably would permit the expanded use of the property in the erection and operation of additional fuel oil storage tanks on the western part of the premises.
On October 10, 1967, the Town Board denied plaintiff’s application for a variance.
Defendants contended on the opening motion and throughout the trial that plaintiff has not exhausted its administrative remedy, which defendants urge is a condition precedent before testing the constitutionality of this ordinance. Anderson, Zoning-Law and Practice in New York State (§ 21.07, supra) contains an enlightening discussion of this premise.
It appears to me that an owner must exhaust his administrative remedy when the statute does not unreasonably deprive him of his property, if it is properly administered. In a case where a temporary and conditional permit was required (Incorporated Vil. of Upper Brookville v. Faraco, 282 App. Div. 943, affd. 307 N. Y. 642), or where an exception was built into the ordinance, “ if approved by the Board of Appeals ” (Rose v. City of New Rochelle, 19 Misc 2d 599, 600), then I can see why a plaintiff should in such cases exhaust his administrative remedy and first apply for a permit or seek approval to be excepted in order to claim the board unreasonably refused, to plaintiff’s damage.
Here, however, plaintiff did, in fact, apply for a variance and relief from the ordinance to change the zoning from a residential district to a commercial district. But, despite the approval of the Town Planning Board and the County Planning Commission, the Town Board determined to deny the application for the variance. So be it.
Counsel for the town at the trial urged that plaintiff must now seek an enlargement or extension of the nonconforming use so as to permit the construction of two tanks that, as proposed, would approximately triple the present capacity of storage, as I compute it.
*753 Plaintiff might have chosen this avenue for relief before the Zoning Board of Appeals, which defendants’ counsel states has the same personnel as the Town Planning Board, and if the Zoning Board of Appeals adhered to the "same recommendation it made when it was constituted as the Town Planning Board, the plaintiff would be home free. But in such an appeal for an enlargement, plaintiff understandably is apprehensive about the ordinance as it relates to nonconforming structures and uses set forth in sections 26, 27, 28 and 29 of article VIII of the Zoning Ordinances of the Town of Pittsford, Monroe County, New York, adopted April 8, 1963.
Truly it is the usual pattern of a nonconforming use regulation to discourage enlargement thereof so as to hopefully phase the use out of existence (see Anderson, Zoning Law and Practice in New York State, supra, § 6.29 et seq).
Indeed such an approach by plaintiff, even if successful, would not rule out the possibility (although it has not been suggested) of future passage by the town of an ordinance providing a schedule whereby all nonconforming uses in the town would be amortized and terminated over a period of time (Anderson, Zoning Law and Practice in New York State, supra, §§ 6.47-6.52).
These conjectures are an indication of the “ ifs ” and “ huts ” inherent in this case, and they point to the reasons the plaintiff has chosen to challenge the ordinance in this fashion, instead of trying for an enlargement of its nonconforming use.
As I see the question here, the validity or constitutionality of the ordinance depends on whether the subject property can reasonably be used as required by the ordinance, or whether the “ A Residential ” classification amounts to a confiscatory taking of plaintiff’s property without due process.
The uncontradicted proof was that the value of all plaintiff’s land when used as a fuel oil storage area in tanks above the ground is $135,000; whereas, under the present ‘ ‘ A Residential ” classification, the land has no value whatsoever. If things stand as they are, the value of the land as presently used in a nonconforming status is $45,000. This picture indicates to me an example of confiscation which the cases prohibit (see Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, supra; Stevens v. Town of Huntington, 20 N Y 2d 352; Dowsey v. Village of Kensington, 257 N. Y. 221, supra; Summers v. City of Glen Cove, 17 N Y 2d 307; Rockdale Constr. Corp. v. Incorporated Vil. of Cedarhurst, 301 N. Y. 519; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222; Chusud Realty Corp. v. Village of Kensington, 22 A D 2d 895).
*754 Two other arguments urged by defendants have to do with the semantics of the word “wholesale”, and whether the “products * * * are not inherently dangerous * * * and are reasonably noninflammable ” (nonflammable), as defined in subdivision (4) of section 14 of article IV of said Zoning Ordinances for the Town of Pittsford, Monroe County, New York.
Defendants contend that the word “ wholesale ” means property sold solely for resale, and that plaintiff here concededly sells fuel oil directly to the large consumer at a discount from the price the consumer would pay if he bought from a retailer. Therefore, defendants claim plaintiff does not qualify as “ selling at wholesale ”. The terms “selling at wholesale” or “wholesaler ” are not defined in the ordinance. In Webster’s Third New International Dictionary (unabridged), I find the definition of wholesale (n) as “ the sale of goods or commodities in quantity usu. [usually] for resale (as by a retail merchant) ”. A wholesaler (n) is then defined as “ a merchant middleman who sells chiefly to retailers, other merchants, or industrial, institutional, and commercial users mainly for resale or business use ” (italics supplied).
These definitions reflect the broad base and range of activity for wholesale .sales. Thus plaintiff’s method of doing business entitles it to be considered as “ selling at wholesale ” within the commercial use of that term.
Finally, the reasonable noninflammability of fuel oil is evident. The proof was that No. 4 and No. 6 fuel oil, which plaintiff sells, have flash points ranging from 175 degrees Fahrenheit to 190 degrees Fahrenheit for No. 4 fuel oil and 175 degrees Fahrenheit to 210 degrees Fahrenheit for No. 6. The flash point or ignition point, as it might be called, for gasoline is 72 degrees Fahrenheit or room temperature. No. 4 and No. 6 fuel oil must be preheated to flow through the hose to permit delivery. They are truly “ reasonably noninflammable ” fuels, as subdivision (4) of section 14 of article IV of the ordinance requires.
Another factor bears on the possible use of the property in an “ A Residential ” district. The proof showed that between April 7 and 19,1969, inclusive, an average of eight freight trains traveled each day east and west on the Penn Central single track railroad bounding plaintiff’s south line. These trains were composed of an average of 93 cars each and passed plaintiff’s property at a legal rate of 60 miles per hour.
Finally, Mr. Robert G-. McAndrew, one of the defendants, a Town Board member and a licensed, graduate engineer, was called as a witness. He was asked whether the land was suitable *755 for ‘1 2A Residential ’ ’ classification as defined in the ordinance, and Mr. McAndrew .said it was not suitable for such use.
Plaintiff is entitled to a judgment declaring the ordinance unconstitutional, invalid and confiscatory insofar as it classifies plaintiff’s property “ A Residential”. Plaintiff is entitled to use all of its property for the storage and sale of fuel oil within the meaning of subdivision (4) of section 14 of article IV of the Zoning Ordinances of the Town of Pittsford, Monroe County, New York.