455 So.2d 1356 (1984)
Mr. & Mrs. Robert Leland REDFEARN, Mr. & Mrs. W. Scott Gibson and Harry T. Howard, III
v.
Clara Binet, wife/of and Jacques Jules CREPPEL D/B/A Columns Hotel.
No. 83-C-2188.
Supreme Court of Louisiana.
September 10, 1984.
*1357 Brod Bagert, Dwan S. Hilferty, Bagert & Hilferty, New Orleans, for applicants.
Jarrell E. Godfrey, Jr., L. Havard Scott, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for respondent.
DENNIS, Justice.
Plaintiffs, New Orleans homeowners in the neighborhood of 3800 St. Charles Avenue, instituted this suit to enjoin defendants, Mr. & Mrs. Jacques J. Creppel, owners of the Columns Hotel at 3811 St. Charles Avenue, from operating a hotel, restaurant and bar at that address in violation of the city zoning ordinance. The trial court found that the hotel and restaurant constitutes a valid nonconforming use but that the operation of a barroom or cocktail lounge is an impermissible expansion of that use. Accordingly, the trial court enjoined the hotel owners from operating a bar or cocktail lounge or serving alcoholic beverages except at private parties. The hotel owners appealed suspensively, and the homeowners answered the appeal demanding that the judgment be modified to enjoin not only the bar and lounge but also the hotel and restaurant.
*1358 The court of appeal, 436 So.2d 1210, agreed with the trial court that the hotel and restaurant constitute a nonconforming use and that the operation of a cocktail lounge should be prohibited as an improper expansion of the nonconforming use. Additionally, the court of appeal apparently found that the restaurant has been expanded impermissibly beyond its former size and that the use of former sleeping rooms for meetings, parties and receptions also constitutes an improper expansion of the nonconforming use. The appeals court apparently found, however, that the sale of alcoholic beverages in connection with the restaurant is permissible as an accessory use. Ultimately, the court of appeal affirmed an amended judgment of injunction incorporating these terms and conditions but also remanding the case to the trial court for a determination of the size of the restaurant before the Creppels began renovating.
The hotel owners applied for and were granted certiorari by this court. The homeowners did not seek to modify the court of appeal judgment. We affirm in part, reverse in part and remand to the trial court.
The Columns Hotel is located in a Multiple Family Residential District (RM-3) according to the city zoning ordinance. Hotel operation is not a permitted use of property in that district. However, the Columns Hotel was built long before the enactment of zoning regulations designating the neighborhood as a residential district. The evidence reflects that the Columns was in operation as a hotel prior to 1885. Mr. and Mrs. Jacques J. Creppel bought the hotel in 1980 and remodeled the interior. The record reflects that the Creppels effected some changes in the use of the rooms in the building. One first floor bedroom was converted to a bar. Two other bedrooms on the ground level, which had previously been one ballroom, were reconverted to one large room.
The operation of the bar, the catering to parties, receptions and political gatherings in the meeting room, and intensified operation of the restaurant caused increased parking and traffic which led the homeowners to file this suit.
At the commencement of this lawsuit the space within the Columns was devoted to the following uses: hotel (22 bedrooms with 14 baths and one kitchenette); bar or cocktail lounge (one former bedroom); meeting room (two former bedrooms); and restaurant.
In their first assignment of error the relator hotel owners contend that the injunction should not have issued because the Columns Hotel is a legal nonconforming use. As we understand the court of appeal and trial court judgments, however, relators can have no complaint as to the judgments on this score. Both previous courts concluded that the hotel and restaurant constitute a nonconforming use. The only disputed issues before us are whether the lower courts erred in restricting or disallowing expansion of the restaurant, operation of the bar or cocktail lounge and operation of the meeting room as unauthorized changes, expansions or extensions of a nonconforming use.
In their second assignment of error relators argue that the bar, restaurant and meeting room should be permitted without restriction as uses accessory to the nonconforming hotel use. A proper response to these arguments requires a brief examination of the precepts concerning nonconforming uses which have been developed by the jurisprudence and enacted as part of the zoning ordinance.
A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as "nonconforming use." 1 Anderson, American Law of Zoning, § 6.01. Cf. 8A McQuillan, Municipal Corporations 3d ed., § 25.185; Black's Law Dictionary 948 (5th ed. 1979). The permitted continuation of a nonconforming use is designed to avoid the hardship, injustice and doubtful constitutionality of compelling *1359 the immediate removal of objectionable buildings and uses already in the area. Fuller v. City of New Orleans, 311 So.2d 466 (La.App. 4th Cir.1975); City of Lake Charles v. Frank, 350 So.2d 233, 235 (La. App. 3rd Cir.1977); Gauthier v. Village of Larchmont, 30 A.D.2d 303, 291 N.Y.S.2d 584, 586 (1968); 101 C.J.S. Zoning § 181. The purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. Beerwort v. Zoning Board of Appeals, 144 Conn. 731, 137 A.2d 756 (1958); 1 Anderson, American Law of Zoning 2d § 6.07 ed (1976). Because a nonconforming use is inconsistent with this objective, it should, consistently with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity. City of Lake Charles v. Frank, 350 So.2d 233 (La.App. 3rd Cir. 1977); County of Ada v. Schemm, 96 Idaho 396, 529 P.2d 1268, 1270 (1974); Monoco Oil Co. v. Pittsford, 59 Misc.2d 750, 300 N.Y.S.2d 488, 492 (1969); Norton Shores v. Carr, 81 Mich.App. 715, 265 N.W.2d 802, 805 (1978).
The general rule is that the continuance of a nonconforming use is a continuance of the same use and not some other kind of use. Kensington Realty Holding Corp. v. Jersey City, 118 N.J.L. 114, 191 A. 787 (1937), aff'd 119 N.J.L. 338, 196 A. 691. The established use may be continued; a different use inconsistent with the zoning regulations is not authorized. Wentworth Hotel Inc. v. New Castle, 112 N.H. 21, 287 A.2d 615, 619 (1972); San Diego County v. McClurken, 37 Cal.2d 683, 234 P.2d 972. Most municipalities have enacted ordinances, however, which permit substitution of nonconforming uses under certain circumstances. The New Orleans Zoning ordinances provide that:
Section 4. Change of Use.
If no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or more restricted classification. Whenever a nonconforming use of a building has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use. The provisions of this section shall not apply to existing industrial uses in the Vieux Carre.
Comprehensive Zoning Ordinance of the City of New Orleans, Louisiana, 426 M.C.S., art. 12, sec. 4.
Applying these rules to the evidence in the present case, we conclude that the relators should not be enjoined from expanding the restaurant within the existing building. First, there is no evidence that the relators made any structural alterations, which involve changes in the supporting members of a building, such as footings, bearing walls or partitions, columns, beams, or girders, or any substantial change in the roof or in the exterior walls. New Orleans Zoning Code, supra, Art. 14, sec. 105. Second, the ordinance clearly authorizes a change in the use of space in the building from hotel use to restaurant use. Article 12, section 4 of the Code provides that a nonconforming use of a building may be changed to another nonconforming use if it is not a less restricted use. Under the zoning ordinance hierarchy of uses, restaurant use is not a less restricted use than hotel use. New Orleans Zoning Code Art. 5, sec. 7.2.8 and 7.2.11.
The changes of use from nonconforming hotel use to cocktail lounge and meeting room uses are not authorized by the ordinance's change of use provision. Cocktail lounge use is clearly a less restricted use than hotel use. New Orleans Zoning Code, Art. 5, sec. 9.2.10. A meeting hall use is also a less restricted use. Article 5, Sec. 10.2.15. The relator hotel owners contend, however, that the cocktail lounge and meeting hall uses are permitted as accessory uses to the nonconforming hotel use. They rely primarily upon the last sentence of the ordinance's definition of a hotel, which provides:
Hotel. A building containing 20 or more individual sleeping rooms or suites, having each a private bathroom attached thereto, for the purpose of providing overnight *1360 lodging facilities to the general public for compensation with or without meals, excluding accommodations for employees, and in which ingress and egress to and from all rooms is made through an inside lobby or office supervised by a person in charge at all hours. Where a hotel is permitted as a principle use, all uses customarily and historically accessory thereto for the comfort, accommodation and entertainment of the patrons, including the service of alcoholic beverages, shall be permitted.
New Orleans Zoning Code Art. 14, sec. 2.64. However, this provision, which applies only "[w]here a hotel is permitted as a principal use," affords little comfort to the operators of the Columns since the Columns is located in a zone in which hotels are prohibited as a principal use.
To determine whether these are accessory uses we must refer to the ordinance's general definition of accessory use, which provides:
Accessory Use. A subordinate use which is incidental to and customary or necessary in connection with the main building or use and which is located on the same lot with such main building or use. New Orleans Zoning Code, Art. 14, Sec. 2.2.
This section summarizes and alludes to most of the precepts which have been employed by courts in determining whether a particular use is accessory to either a permitted use or a nonconforming use. Some zoning ordinances permit accessory uses only in relation to permitted, not nonconforming uses. County of Ada v. Schemm, 96 Idaho 396, 529 P.2d 1268 (1974); Anderson, supra § 6.38. The New Orleans ordinance, however, tacitly recognizes accessory uses in relation to both.
The traditional purpose of zoning is to reduce or eliminate the adverse effects of one type of land use on another by segregating different uses into different zoning districts. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387-95, 47 S.Ct. 114, 118-21, 71 L.Ed. 303 (1926); 1 R. Anderson, supra §§ 8.14-.15; Note, "Customary" Requirement For Accessory Uses, 56 B.U.L.Rev. 542, 547 (1976). Accessory uses are permitted exceptions only to the extent that this purpose is not frustrated. When an accessory use would adversely affect a locality, courts have generally interpreted zoning ordinances to prohibit the use. See Pratt v. Building Inspector, 330 Mass. 344, 346-47, 113 N.E.2d 816, 817 (1953); Gray v. Ward, 74 Misc.2d 50, 56, 343 N.Y.S.2d 749, 755 (Sup.Ct.1974), aff'd mem., 44 App.Div.2d 597, 354 N.Y.S.2d 591 (1974). Consequently, when the full definition of an accessory use is spelled out, including the provisions which must be inferred from the basic purpose of the zoning ordinance, we believe it closely resembles Professor Williams' definition, under which accessory uses must meet the following tests:
1. They must be related to the principal use (usually not explicitly stated, but implied).
2. They must be subordinate and clearly incidental to the principal use (almost always stated).
3. They must also be customarily incidental (almost always stated).
4. They must be located on the same lot as the principal use (almost always stated)and, occasionally, must also be in the same ownership.
5. They must not alter the character of the area or be detrimental thereto (occasionally stated).
3 Williams, American Land Planning Law § 74.08.
Applying these precepts, we conclude that bar and meeting room uses of the property can be classified as accessory uses of the hotel and restaurant if they meet all of these tests. We further conclude that it is clear that these uses meet some of the tests but that it cannot be determined from this record if all are met.
It is clear from the present record that these uses are related to the principal nonconforming use and that they are located on the same lot. We gather also that within the relevant geographical area these *1361 uses are customarily incidental to the operation of a hotel. Whether a bar or a meeting room would be subordinate and clearly incidental to the hotel-restaurant operations or whether they would alter the character of the area or be detrimental thereto, however, are questions regarding which the present record fails to supply an adequate basis for decision. The record does not reflect the size of the floor space of the hotel, restaurant, bar and meeting room. The evidence does not disclose the number of patrons that the hotel and restaurant are expected to serve. These facts must be determined in order to decide the maximum permissible size of a bar or a meeting room which is subordinate, incidental and related to the hotel-restaurant use. Nor can we determine from the present record whether operation of a related, subordinate and clearly incidental bar and meeting room in connection with the hotel would alter the character of the area or be detrimental thereto. A bar or meeting room of sufficient dimensions to serve the hotel restaurant patrons may or may not alter or be detrimental to the character of the area. Because the state of the record makes it improper for this court to decide these and similar questions, and because we have attempted to clarify some of the relevant jurisprudential precepts for the first time, we will remand the case to the trial court for further proceedings.
On the other hand, the record fully supports the court of appeal's finding that the sale of alcoholic beverages is properly an accessory use to the restaurant operation. Such incidental sale of beverages with meals is customarily incidental to restaurants in the relevant geographical area and is related, subordinate and clearly incidental to the Columns restaurant. This restaurant-related use is located on the same lot and does not alter or do detriment to the area.
In their third assignment of error, relator hotel owners contend that no additional parking spaces will be required by their operation of the bar and the meeting room since the number of new spaces required is less than ten percent. Article 1, sec. 1. Before this calculation can be made, however, the trial court must take additional evidence and determine, among other relevant factors, the following: (a) whether a bar or a meeting room fulfilling all of the requirements of an accessory use will be permitted; (b) the floor space which each principal and accessory use will be permitted to occupy; (c) the space previously occupied by each of the uses of the Columns; (d) whether the principal and accessory uses require an increase of at least 10% over the number of parking spaces previously required.
Accordingly, the court of appeal judgment is affirmed insofar as it recognizes that the hotel and restaurant are legal nonconforming uses, and that service of alcoholic beverages with meals in the restaurant is a proper accessory use but the judgment is otherwise vacated and the case is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I am unable to disagree with the majority that relators should not be enjoined from expanding the restaurant within the existing building. Although the majority correctly holds that a cocktail lounge and meeting room are less restricted uses than a hotel use, I disagree with its conclusion that these uses may be permitted as accessory uses to the nonconforming hotel use. The definition of a hotel provides in pertinent part:
Where a hotel is permitted as a principal use, all uses customarily and historically accessory thereto for the comfort, accommodation and entertainment of the patrons, including the service of alcoholic beverages, shall be permitted. (Emphasis added.)
Clearly, this allows accessory uses only in relation to a permitted principal use, not *1362 a nonconforming use. The general definition of an accessory use must be read in pari materia with the definition of hotel.
Accordingly, I respectfully concur in part and dissent in part.