CURRAULT, Judge.
This appeal arises from a judgment denying injunctive relief to plaintiffs, Bill Kuhn, Kenneth Laborde, Jack Donnow, James Patterson, Larry Thompson, Henry Turner, Glen Guilbault and John Corder, relative to the nonconforming use of a residential apartment owned by defendant, Jack Scior-tino, in the Parish of Jefferson.
The facts show that on February 8,1952, defendant, A.J. (Jack) Sciortino, purchased a residence and accessory building located at 306 W. William David Parkway in Me-tairie, Louisiana. Shortly after the purchase, the defendant began renting and/or allowing the accessory building to be used as a residence by a second family. In 1958, the Jefferson Parish Council passed the Jefferson Parish Zoning Ordinance, Ordinance 3813 (now known as Ordinance 5687, *667 as amended), establishing zoning restrictions for the Parish of Jefferson. At that time, the 300 block of W. William David Parkway was zoned R-l, single family residential district. However, structures used as rentals or for second families prior to the enactment were allowed to continue to be used in that manner as long as the use was not discontinued for one year.
The defendant continued to rent or allow the accessory building to be used as an apartment by a second family for a period of years and thus had established a valid nonconforming use of the accessory building. However, between 1983 and 1984, a question arose as to whether the accessory premises had been vacated for more than a year.
On January 23,1985, the seven plaintiffs, comprising the majority of the adjacent property owners to 306 W. William David Parkway, instituted an action seeking, inter alia, a writ of injunction forever prohibiting and enjoining the defendant from using the accessory building at 306 W. William David Parkway as an apartment for a second family in violation of the Comprehensive Zoning Ordinance.
Following trial on the merits, on May 9, 1985, the trial court denied the injunctive relief sought relative to the use of the accessory building, finding that the accessory building had not been vacant for more than one year as required by the Comprehensive Zoning Ordinances. Judgment was entered on June 24, 1985.
Plaintiffs thereafter perfected an appeal of that portion of the judgment, alleging that the trial court erred in denying the injunctive relief on the basis that the accessory building was not vacant and unused as an apartment for a second family for more than one year.
As stated by appellant, the purpose of zoning ordinances is to confine certain uses of property to certain areas and localities. Redfearn v. Creppel, 455 So.2d 1356 (La.1984).
“A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as a ‘nonconforming use.’ ” Redfearn v. Creppel, supra, at pages 1356 and 1358. As stated by the Redfeam court, the purpose of permitting the nonconforming use to continue is to avoid “the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area.” At page 1359. However, a nonconforming use is inconsistent with the objective of zoning ordinances to confine certain uses of property to certain areas, thus in order to preserve the property rights of adjacent property owners, the continuation of a nonconforming use should be viewed narrowly and any doubt resolved against continuation of the nonconforming use. City of Lake Charles v. Frank, 350 So.2d 233 (La.App. 3d Cir.1977); Redfearn v. Creppel, supra.
Consistent with this, the Jefferson Parish Comprehensive zoning ordinance provided that “no nonconforming use may be reestablished where such nonconforming use has been discontinued for a period of at least one year.” Jefferson Parish Comprehensive Zoning Ordinances, 159 (1985).
After trial of the matter, the trial court determined that the evidence was insufficient to prove that the accessory apartment was vacant for one year. Appellant argues that the testimony of the witnesses does not support the finding.
The undisputed facts show that the apartment was continuously occupied until sometime in 1983. However, in testimony, several of the appellants contended that after the apartment was vacated in May, 1983, it was not tenanted again until August, 1984.
The defendant, Jack Sciortino, called by plaintiffs under cross-examination, testified that the accessory building was continuously occupied as an apartment by a second family from at least as early as 1953 through and including the date of the trial. *668 Appellant asserts that this testimony was inconsistent with the defendant’s responses to the plaintiffs’ interrogatories. According to the defendant’s answers to interrogatories, the accessory building was occupied by Jack Stokes from 1963 to 1967; by Chuck McAllison from 1967 to 1971; by Dulie Champagne from 1971 to 1976; by Maribel Martinez from May, 1977 to May, 1980; by Philip J. Sciortino from 1980 to 1981; by James Christy from August, 1981 to August, 1984; and by Joseph Sciortino, III from August, 1984 to the present. The evidence later revealed that Jack Stokes was really Jack Stelz and that McAllison is McAllister who lived in the apartment in the 1980’s. Appellee also stated in response to the interrogatories that no rent had been charged to any of the occupants of the accessory building. The testimony of the witnesses showed that several tenants paid rent in varying amounts.
At trial, appellee was questioned as to his answers in the interrogatories and explained that his deceased mother handled the apartment when she was living. He stated he was not able to be definite about the dates or the rental. Appellee testified that often students from a beauty school where he taught used the apartment until they found other arrangements. He stated that his nephew, Joseph Sciortino, and his nephew’s wife moved into the apartment somewhere between May and August, 1984.
James Christy was also called by plaintiffs under cross-examination. He stated that from the summer of 1980 until 1984 he lived in the apartment when he was in town. As an offshore oil worker, he testified he was absent from the apartment for long periods of time, but that he kept his belongings there. Mr. Christy also noted that he performed various odd jobs for defendant and fixed up the apartment and that he paid no rent because of that fact.
Mr. Christy’s testimony conflicted with the testimony of plaintiffs’ witness, John “Chuck” McAllister. Mr. McAllister stated he rented the apartment from May, 1981 until May 19, 1983. He produced cancelled checks made out to appellee in proof thereof. He also stated, however, that he performed some remodeling on the apartment in exchange for which he deducted his expenses. Both he and Mr. Christy stated they occupied the apartment alone.
Joseph Sciortino, III, appellee’s nephew, testified on cross and direct examination that he and his wife were married in January, 1984, and that they moved into the apartment in May, 1984. From January to that time, the couple resided with his parents due to knee surgery Mr. Sciortino underwent shortly after his marriage.
Various plaintiffs and/or their wives were called to testify. Jack Donnow, the neighbor directly across the street from defendant, claimed the nephew moved into the apartment five or six months previous (November or December, 1984) to the trial. He stated the last tenant before Joseph Sciortino was Chuck McAllister and he did not remember Mr. Christy at all. Mr. Don-now resided across the street from appel-lee’s residence since 1951 or 1952.
Henry Turner, another longtime neighbor living across the street, stated that Joseph Sciortino moved in the apartment in the late summer of 1984. He too did not recall anyone living in the apartment between the time Mr. McAllister left and Joseph Sciortino occupied the apartment.
Betsy Corder, plaintiff John Corder’s wife, testified that she and her husband lived on the same street, but three houses down from defendant’s house for six years. She also stated that defendant’s nephew moved into the apartment in August, 1984. She stated that she remembered the month because another neighbor, the Labordes, began renovation on their house at the same time. She stated because of her young children she frequently has occasion to pass the house during the day and did not see any person leaving or arriving as was common when Mr. McAllister lived in the apartment. She also failed to recognize Mr. Christy.
The next witnesses, Corinne and Kenneth Laborde, are appellee’s neighbors directly to the right of his house. The La- *669 bordes lived next to appellee since 1979. They recognized Joseph Sciortino and also said he moved into the apartment in August, 1984. Both recalled the time because they began renovation in September and Mr. Laborde’s father died in June. They also testified that Mr. McAllister moved out in the spring of 1983 and that they noticed no one else coming and going from the apartment until August, 1984. Mr. and Mrs. Laborde stated that their close proximity to the apartment made them aware of whether the apartment was tenanted. Mr. Laborde noted that during the vacancy a window in the apartment was unshaded and they could see that the apartment was unoccupied. Both witnesses did not believe Mr. Christy lived at the apartment, but only did odd jobs at the Sciortino house.
After the close of appellee’s case, Joseph Sciortino was called to testify a second time. He stated that it was five or six months after his wedding that he and his wife moved into the apartment which would have placed him in the apartment sometime in June or July. However, his further testimony revealed that he meant 13 weeks from the surgery or the middle of May, and that the six months referred to the amount of time he was recuperating from his surgery.
Following Mr. Sciortino’s testimony, Marie Lahitte was called by appellee. Ms. Lahitte noted that at least two other apartments exist on that street. She testified that she has known the Seiortino’s for 30 years and is frequently a visitor at their home. Ms. Lahitte unequivocally stated that the apartment had never been vacant for over a year.
Mr. Christy was reexamined as to his comment that he lived in the apartment many times. He explained that he was not constantly at the apartment due to his job.
Appellant points to the conflicting testimony of Mr. Christy and Mr. McAllister and to discrepancies in appellee’s testimony and answers to interrogatories to support the position that the evidence overwhelmingly favors appellants. While we agree that Mr. Christy’s testimony was confusing and not totally credible and that there were minor discrepancies in appellant’s testimony, it is not clear that the trial judge was in error in finding that the apartment was not vacant for one year. It is a close question depending upon allegations involving a difference of two months or less. And all of the witnesses as to the actual date appellant’s nephew moved in have a bias toward a certain outcome of the case.
In order for this court to modify the judgment, we must find that the trial judge committed manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Since we are unable to do so under these facts, we decline to disturb the trial court judgment denying the injunctive relief sought by appellants.
Therefore, after a review of the law and evidence, the judgment of the trial court is hereby affirmed.
AFFIRMED.