| TWICKER, Judge.
This is an appeal by the owner of an automobile service station from a district court judgment which granted the petition of neighboring property owners for an injunction against the appellant’s attempt to obtain *473 a zoning variance for a proposed expansion of Ms service station. We affirm.
The appellant, David Speed, owns a Texaco service station located at 8910 West Esplanade Avenue in Kenner, known as the Driftwood Texaco station. The property is a nonconforming use in an R-l (single family residential) area. It has been operated for more than 20 years as a gasoline station and repair garage, a C-2 (general commercial) type of use. The station formerly was owned by Texaco, Inc. Speed managed it for several years as a non-owner operator until he bought the property in 1994.
On November 15, 1994 he applied to the Kenner Department of Planning for a zoning variance in order to remodel the station’s building with a 10-foot by 38-foot addition and other changes. His application was rejected and he appealed to the Kenner Board of Zoning Adjustments. Following a public hearing on December 7,1994 at wMch several neighboring property owners spoke against the proposed alterations, the Board of Zoning Adjustments voted to grant a variance of the non-conforming use to permit Speed’s proposed modifications, subject to certain restrictions.
l2On December 30, 1994 several of the neighboring property owners filed tMs suit in the district court against David Speed, the City of Kenner, the Kenner Board of Zoning Adjustments (hereafter BZA), and the individual members of the BZA who had voted in favor of granting Speed’s application. Plaintiffs alleged the BZA had exceeded its powers in granting Speed’s application for an expansion of Ms non-conformmg use, because the proposed alteration did not comply with permitted alterations or additions to noneon-formrng structures as set forth in the Zomng Ordinances of the City of Kenner. Plaintiffs sought to restrain and enjom Speed from beginning any construction on the premises or from takmg any action to “structurally alter, expand, extend or erect or restructure or convert” the present building on Ms site. They also sought to restrain and enjom the City of Kenner from issuing permits of any kind for such purposes, pending another hearing before the BZA. Alternatively, they sought to vacate the BZA’s order.
The district court issued a temporary restraining order on December 30, 1994. On February 2, 1995 defendant Speed filed an answer, assertmg that the present facility exists lawfully under the Kenner Zoning Ordinances, that the variance granted was proper, and that the BZA did not abuse its discretion. He also made a reconventional demand against plaintiffs for damages for wrongful issuance of the temporary restrain-mg order.
On February 9, 1995 the court granted a preliminary injunction by consent of the parties and conducted a hearing for the permanent injunction. On March 29, 1995 the district court rendered a judgment wMch vacated the BZA’s order and granted a permanent injunction proMbiting Speed from “taking any action to structurally alter, expand, extend, or in any way erect or restructure or convert the buildmg....” The court made the following finding:
[T]he Kenner Board of Zoning Adjustments exceeded its authority by allowing the defendant, David Speed, to expand a non-conformmg use for the Driftwood Texaco Station... .The additional increase m size and the Speed building expanded use are both beyond the authority of the Ken-ner Board as it relates to a ‘non-eonform-ing use’ of the property.
Speed filed motions to modify or amend the judgment. The motion for new trial was demed, but the parties agreed to a consent judgment in wMch they stipulated that the origmal judgment was never intended to prevent Speed’s proposed work to remove and replace the existing canopy, pumps, pumping islands, and fascia on the building, and to replace existing lighting and install new lightmg.
| aSpeed appealed. He contends the trial court erred in holding that the Board of Zoning Adjustments exceeded its authority m granting him a building permit and/or variance, in issuing a permanent injunction, and in vacating that part of the BZA’s decision permitting external modernization and internal renovation of the present facility. In addition, appellant seeks remand of the ease for trial of his reconventional demand.
*474 FACTS
The testimony established that the Driftwood Texaco station had been in operation for over 20 years as a neighborhood fall-service station, including a full-service repair garage. At present the only sale of nonautomotive products is through several vending machines. Speed’s proposed addition would add 532 square feet to a structure that presently has 1,296 square feet. It would add a convenience store selling alcoholic beverages to a business that presently operates as a service station.
The neighbors who testified were concerned that expansion to a convenience store would lead to increased traffic and encourage the presence of loiterers, particularly because the proposed convenience store operation would sell alcoholic beverages. All the neighbors testified the Driftwood Texaco currently is a service station and auto repair facility which sells soft drinks from machines. They all testified the station was there when they bought their property, but all stated they had felt assured it would not expand beyond its present nonconforming use. They also felt that the changes would decrease their property values, although none could estimate by how much. They related incidents concerning problems they had already experienced from having the commercial facility in their neighborhood — e.g., a drunken vagrant found sleeping between two houses; teenagers gathering behind the station to smoke and drink; people using the station’s public telephone at all hours; people loitering about the premises; trash tossed over into neighbors’ yards by customers of the station.
Frank Spalitta testified as a representative of Sauve Heirs, Incorporated, which owns the two lots at the corner of Lake Trail Drive and West Esplanade Avenue, immediately adjoining the Driftwood Texaco station. Sauve Heirs developed the entire Lake Trail Drive subdivision. Spalitta testified that he had been involved in all transactions since the subdivision’s inception in 1974 or 1975. When they started the subdivision in 1975, the service station was already there. At that time 14it was owned by Texaco, Inc. He stated Texaco had attempted to expand the station on at least three occasions and had contacted Sauve Heirs with offers to buy the adjoining lots. Spalitta was concerned that property values would decrease if the station added a convenience store operation.
Christian Centanni, Chairman of the Board of Zoning Adjustments, testified the BZA felt the variance would be in order because the place is already a nonconforming use. The BZA thought the accessory building and renovations would be allowable because of that. They granted the variance to allow beautification by the renovation and for storage because they felt it was a matter of renovation rather than expansion. He stated that the property is zoned as a nonconforming C-2, which he said would allow the owner to have a minimart and to sell alcoholic beverages. It was his impression that the purpose of the addition was strictly to provide space to store oil products, to replace the old drink machines, and to make room for a seating area. His understanding of “accessory building” is one attached to an existing nonconforming building. He admitted he had not seen the final plans for the building at the time of the BZA hearing.
Shaun McGarry, accepted as an expert witness in marketing, testified on behalf of the defendant. He is employed by Star Enterprise, which is the marketer for Texaco products and is Speed’s supplier. Star is half-owned by Texaco, Inc. He testified that since the 1980s there has been a marketing trend among gasoline companies toward adding space to sell accessory items in connection with gasoline and oil products. The majority of outlets now do so. McGarry said that Driftwood Texaco has competition from two ends of West Esplanade: there are Exxon and Shell facilities at the intersection of Williams Boulevard and West Esplanade and, in the other direction, a Citco outlet at Transcontinental and West Esplanade, in addition to Chevron and Shell stations at the intersection of Clearview and West Esplanade. These competitors all have full-size convenience stores and McGarry estimated they pump at least three times as much gas as Speed’s Driftwood Texaco station. He stated it is very necessary for Speed to undertake the modernization and addition in *475 order to keep up with the competition. Otherwise, the competition will cause him to lose business and may eventually drive him out of business.
The parties stipulated McGarry’s further testimony would be that in such operations, 75 to 80 percent of sales relate to automotive products and gasoline, and 20 to 25 percent relate to the ^accessory items. Further, they stipulated that if Speed were allowed to expand as he proposes, he would have approximately 75 to 80 percent automotive sales and 20 to 25 percent nonautomotive.
David Speed testified he has been in the service station business for 20 years. He has been operating the Driftwood Texaco station for about 11 years and he purchased the property from Texaco in October 1994. In addition to pumping gasoline he has a full-service mechanic at the Texaco station and some soft-drink, candy and cigarette machines. The station has 12 gas pumps and two garage bays. Gasoline sales are probably 80 percent of his business. He was aware that Texaco had previously applied for a zoning variance to operate a convenience store on the site. He stated the reason its applications were rejected was that Texaco wanted to install a carwash and people were opposed to that. He stated that changing the sales office would give customers a place to sit down and would provide additional storage for his service station products.
Speed admitted that when two members of the Board of Zoning Adjustments came personally to view his operation, he told them the proposed addition was for a storage space. He stated he never said anything about a convenience store because he is not trying to put in a convenience store; he is trying to put in a place for people to sit down while their cars are serviced, but it will have convenience food and items in it. He admitted his plans called for a large commercial cooler (shown on the plans as approximately 17 feet long), which would hold soft drinks, milk, hot dogs and beer, among other items. He also planned to sell cigarettes and bread. He expected the change to increase his sales volume sufficiently to hire an additional employee to handle that area. He also admitted that convenience items have the highest profit margin — 30 to 40 percent — as opposed to 18 to 25 percent for the garage and eight percent for the gasoline. He planned to invest $300,000 in the renovations. There was no testimony that he was having any financial difficulties.
LAW
The Kenner zoning ordinance sets out the extent of the BZA’s authority as follows: The Board of Zoning Adjustments shall have the following powers, and it shall be its duty:
A. To hear and decide appeals where it is alleged there is an error of law in any order, requirement, decision, or determination made by the Director of Public Works in the enforcement of City of Kenner ordinance adopted pursuant to R.S. 33.4721[sic] thru R.S. 33.4729[sic].
I ***** *
1 6
C. The Board shall have the authority to grant the following variances:
* * * * . * *
2. Authorize upon appeal whenever a property owner can show that a strict application of the terms of the ordinances, relating to the use, construction, or alteration of buildings or other structures, or the use of land, will impose upon him unusual and practical difficulties or particular hardship, but only when the Board is satisfied that a granting of such variance will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a deviation from the comprehensive plan as established by this Ordinance, and at the same time, the surrounding property will be properly protected. ******
In consideration of all appeals and all proposed exceptions or variances under the terms of this Ordinance, the Board shall, before making any exception or variance from the Ordinance in a specific case, first determine that it will not impair an adequate supply of air or light to adjacent *476 property, or unreasonably increase the congestion in. public streets, or increase the danger of fire, or endanger the public safety, or unreasonably diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, morals, comfort or welfare of the inhabitants of the City of Kenner....
Zoning Ordinance of the City of Kenner, Article XXI, § 21.04.
There is a prima facie presumption of validity which attaches to the acts of a duly constituted administrative board, such as the Board of Zoning Adjustments. State ex rel. Phillips v. Board of Zoning Adjustments of City of New Orleans, 197 So.2d 916, 918-919 (La.App. 4 Cir.1967). On appeal, the burden is on the appellant or relator to affirmatively show the board abused its discretion or its decision was in excess of its jurisdiction or otherwise erroneous as a matter of law. Id.
Each zoning ease must be decided on the facts peculiar to it, no general rule can be formulated as to what constitutes hardship, or as expressed in the statute here under consideration, ‘unusual and practical difficulties or particular hardship’, sufficient to authorize the grant of a variance, no single factor determines what constitutes such hardship, and all relevant factors must be considered.
£$• 4* íjí íjí
Even if financial loss had been shown, such loss is only a factor to be considered in determining hardship and will not, standing alone, constitute a hardship sufficient to justify a variance.
# * ‡
Clearly, the Board does not have authority to amend or change the Zoning Ordinance by granting a variance or in any other manner. * * * And the fact that the Board may have granted similar relief in other cases, none of which appear to have been subjected to judicial preview, cannot change this. The Board cannot, by its own unauthorized acts, acquire authority it does not possess.
Id. at 919-920.
The zoning ordinance defines relevant terms as follows:
2. ACCESSORY BUILDING. A subordinate building, attached to, or detached from the main building, the use of which is incidental to the main building and not used as a place of habitation, for a living room, kitchen, dining room, parlor, bedroom or library....
3. ACCESSORY USE. A subordinate use which is incidental to and customary or necessary in connection with the main building or use and which is located on the same lot with such budding or use.
* * Hs * * *
80. NONCONFORMING USE. A building or land which does not conform with the height, area, or use regulations of the district in which it is located.
‡ % Hs íJí *
111. VARIANCE. A variance is a relaxation of the terms of the zoning ordinance where such variance will not be contrary to the public interest and where, owing to conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of the ordinance would result in unnecessary and undue hardship. As used in this ordinance, a variance is authorized only for height, area, and size of structure or size of yards and open spaces; establishment or expansion or a use otherwise prohibited shall not be allowed by variance, nor shall a variance be granted because of the presence of non-conformities in the zoning district or uses in an adjoining zoning district.
Zoning Ordinance of the City of Kenner, Article III, § 3.02(A).
Article XIX, Nonconforming Uses, states, “It is the intent of this ordinance to permit nonconforming uses to continue, but not to encourage their survival. Such uses are declared by this ordinance to be incompatible with permitted uses in the districts involved.” Zoning Ordinance of the City of Kenner, *477 Article XIX, § 19.01(A). Further, the article provides that “any lawful building, structure or use” existing on or prior to the adoption of the ordinance may be continued “although such buildings, structure or use does not conform to the regulations of the district in which it is located.” Id., § 19.01(B). Additions and alterations to nonconforming uses are strictly limited:
A. No building or land shall hereafter be used, and no building or part thereof shall be erected, reconstructed, converted, moved, or structurally altered unless in conformity with the regulations as set forth in this ordinance;
laB. A nonconforming use of a building or a portion thereof, or of land or a portion thereof, shall not be extended or enlarged ... except when required by law or ordinance ....
Zoning Ordinance of the City of Kenner, Article XIX, § 19.02.
“A nonconforming use may be changed to a use of the same classification or more restrictive classification. Whenever a nonconforming use of a building or land has been changed to a more restrictive use, such use shall not thereafter be changed to a less restricted use.” Zoning Ordinance of the City of Kenner, Article XIX, § 19.04.
Defendant argues that his service station currently has a C-2 (General Commercial District) type of use (“Service Stations”) and that the change he proposes would be a C-l (“Neighborhood Commercial District”) use, changing his nonconforming C-2 use to a more restrictive C-l use (“Stores and shops ... for the conduct of a retail business occupying not more than four thousand, five hundred (4,500) square feet of gross floor area”). He contends that is permissible under § 19.04 of Article XIX of the Zoning Ordinance,.
Plaintiffs assert that the proposed use does not reflect the nature and purpose of the original use; it differs in character, kind and nature from the original use; it would substantially affect the neighborhood adversely; and it is a drastic enlargement or extension of the original use. They contend the issue is not whether the proposed use is an accessory use or an expanded use, but rather whether the Board of Zoning Adjustments had authority to grant the variance.
Plaintiffs also contend it was not their burden, as opponents of the variance, to show damages to themselves; rather it was Speed’s burden, as the petitioner for the variance, to show hardship sufficient to justify the variance. His argument was that the acknowledged trend is to combine service stations with convenience stores and, as a result, his operation may suffer financial problems in the future. He admitted, however, that none presently exist and he showed no specific projected losses. Plaintiffs point out that Speed made no showing of hardship either at the board hearing or in court. Instead, he said he needed to expand to keep up with his competition.
Plaintiffs assert further that the variance was granted by the Board without any discussion or apparent consideration as to whether the additions were permissible as allowable expansions of the nonconforming use or as accessory uses. Further, the Board did not discuss the extent of its own authority or discuss the neighbors’ opposition. Finally, the Board made its decision based on what 190Speed admitted was a hasty preliminary plan, drafted specifically for purposes of the Board’s meeting.
The purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. * * * Because a nonconforming use is inconsistent with this objective, it should, consistently with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity. * * *
The general rule is that the continuance of a nonconforming use is a continuance of the same use and not some other kind of use. * * * The established use may be continued; a different use inconsistent with the zoning regulations is not authorized. * * * [Citations omitted.]
Redfearn v. Creppel, 455 So.2d 1356, 1359 (La.1984). The Redfeam court further held,
The traditional purpose of zoning is to reduce or eliminate the adverse effects of *478 one type of land use on another by segregating different uses into different zoning districts. * * * Accessory uses are permitted exceptions only to the extent that this purpose is not frustrated. When an accessory use would adversely affect a locality, courts have generally interpreted zoning ordinances to prohibit the use. * * * Consequently, when the full definition of an accessory use is spelled out, including the provisions which must be inferred from the basic purpose of the zoning ordinance, we believe it closely resembles Professor Williams’ definition, under which accessory uses must meet the following tests:
1. They must be related to the principal use (usually not explicitly stated, but implied).
2. They must be subordinate and clearly incidental to the principal use (almost always stated).
3. They must also be customarily incidental (almost always stated).
4. They must be located on the same lot as the principal use (almost always stated) — and, occasionally, must also be in the same ownership.
5. They must not alter the character of the area or be detrimental thereto (occasionally stated).
[Citations omitted.]
Redfeam v. Creppel, 455 So.2d at 1360.
“Because a non-conforming use is inconsistent with the objective of a zoning ordinance which is to confine certain classes of buildings and uses to certain localities, it should be viewed narrowly and have all doubts resolved against continuation or expansion of the non-conformity in order to preserve the property rights of adjacent property owners. Continuance of the | ipnon-eonforming use is the continuance of the same use and not some other use.” Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 73 (La.App. 4 Cir.1992).
‘While we are bound to the conclusions of fact of the board absent an abuse of discretion, * * * an administrative board cannot usurp the judiciary’s exclusive right to interpret the law. La. Const. Art. 2 Sec. 2, Art. 5 Sec. 1.” Brown v. City of New Orleans, 560 So.2d 983, 985 (La.App. 4 Cir.1990).
Applying these principles to the facts of this case, we find no error in the trial court’s ruling. The primary purpose for which Speed sought the enlargement of his building — a convenience store — is not an accessory use because it is not incidental to the operation of a service station. It cannot pass muster under the requirement that continuance of a nonconforming use must be continuance of the same rather than a different use. It is an expansion of the nonconforming use.
The BZA made its determination without any showing that construction of the addition for purposes of adding a convenience market would have a positive effect on the neighborhood. Rather, its chief positive effect would be to increase the income of the station, that is, income to the applicant, Speed. Speed made no showing of hardship or difficulty that would justify the change. In the absence of such showings, the BZA was without authority to authorize a variance. Guenther v. Zoning Appeals Bd., Parish of Jefferson, 542 So.2d 612, 615 (La.App. 5 Cir.1989).
Given our conclusion on the main demand, the issue of Speed’s reconventional demand is moot.
DECREE
Accordingly, the judgment of the district court, as modified on November 13, 1995, is affirmed. Costs of the appeal are assessed to the appellant, David Speed.

AFFIRMED.

DUFRESNE, J., dissents with written reasons.