HARRISON, J. (Ad Hoc).
_JjThe defendant, the Parish of Jefferson (“Parish”), appeals from a trial court judgment enforcing a permanent injunction against it.[1] The plaintiff is Morning Park, LLC (“Morning Park”), the successor in title to the original plaintiff, Oscar J. Tol-mas. For the following reasons, we reverse the trial court judgment.
FACTS
In June 1957, Mr. Tolmas purchased a piece of property in Jefferson Parish. The majority of the property was to be developed as a residential neighborhood. On the subdivision plan, the land at issue here, Square 1, was labeled as commercial. Jefferson Parish approved the plan for the subdivision on July 1, 1957. In 1958, the Parish adopted a Comprehensive Zoning Ordinance (“CZO”) and Square 1 was zoned as residential, R-l. In October 1958, the Parish issued Mr. Tolmas a permit to build an office building on the site for his construction business. Thus, despite the residential zoning designation and the CZO, the Parish allowed the use of the property for commercial use in keeping with its prior approval of the subdivision plan.
In 1962, Mr. Tolmas had shells placed on the parking lot of Square 1 up to Veterans Memorial Highway (“Veterans”) to allow ingress and egress to his office. On May 11, 1962, the Parish sent a letter to Mr. Tolmas telling him that the shells were on public property and interfered with a ^street beautification program by the Parish. Mr. Tolmas was told to restore the public property to its former condition, or *656 he would be prosecuted for destroying and defacing public property.
On May 16, 1962, Mr. Tolmas filed a petition for a permanent injunction against the Parish, stating that he owned an office building on Square 1 along with a sign advertising a subdivision called “Cecile Park.” He acknowledged that he put shells from the front of his office building to the shoulder of Veterans- to provide ingress and egress from the street to the parking area in front of his office. He claimed that similar ingress and egress were present on other properties and businesses fronting on Veterans. He asserted that the letter from the Parish violated the due process and equal protection clauses of the Louisiana and United States Constitutions. He argued that no other property owners received letters from the Parish and he alleged that the Parish’s actions were discriminatory and unconstitutional. Notably, Mr. Tolmas’ petition did not assert that the Parish’s threatened actions concerned his property’s use for commercial purposes based upon any assertions by the Parish of the zoning limitation for Square 1 as residential property under the CZO.[2]
He sought a temporary restraining order against the Parish, and in due course, preliminary and permanent injunctions prohibiting the Parish from doing any act which would interfere with his peaceful possession of his |sproperty, including his right to frontage ingress and egress between Veterans and his property.
The trial court granted a temporary restraining order in favor of Mr. Tolmas. A preliminary injunction was issued on October 18, 1962. On February 7, 1963, a consent judgment was entered, ordering that the preliminary injunction be made permanent. The Parish was prohibited from committing any act toward disturbing Mr. Tolmas’ peaceable possession of the disputed property, including his right to frontage, entrance and exit from Veterans and his office, as the said rights were enjoyed on May 14, 1962, or from any interference whatsoever to the peaceful use and enjoyment of Mr. Tolmas’ property-
The office building was demolished in early 2004. On April 28, 2004, Morning Park purchased the property from Mr. Tolmas. In 2010, Morning Park sought to obtain a building permit for an office building and parking garage to be built on the site, but learned that the property was zoned as residential. The Parish denied Morning Park a letter of clearance to use the property for an office building.
Morning Park filed a motion to enforce the permanent injunction, alleging that all rights to the property held by Mr. Tolmas, including the right to use the property for offices, flowed to Morning Park. Morning Park argued that the injunction should be enforced, restraining the Parish from interfering with Morning Park’s use and development of the property for an office building.
14A hearing was held on the motion on February 24, 2011. The Parish argued that, because the property was used for a commercial purpose before the Code of Ordinances zoning it as residential, the property could be used for commercial use until such use stopped. The Parish contended that when the building was demolished in 2004, the commercial use stopped and the property reverted to its zoning as *657 residential. The trial court found in favor of Morning Park, enforcing the permanent injunction against the Parish, prohibiting it from interfering with the peaceful possession of Morning Park and its use of the property for offices. The trial court stated:
All right. It appears what the Plaintiffs are requesting is the use of the property for offices. It’s very specific in here.
So according to what’s filed in the Record and the requests of the parties, the Court is going to enforce the permanent injunction against the Parish of Jefferson barring the Parish of Jefferson from interfering with the peaceful possession of Morning Park, LLC and its use of the property for offices.
That is what was requested. That is what the Court is ordering.
The Parish appealed, arguing that the 1963 permanent injunction in favor of Mr. Tolmas did not transfer to Morning Park the right to use the property for offices and that a valid nonconforming use of the property ended when the nonconforming building was demolished in 2004.
DISCUSSION
La. C.C.P. art. 8601 provides in pertinent part:
A. An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; ....
C. During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
IfiD. Except as otherwise provided by law, an application for injunctive relief shall be by petition.
A permanent injunction is a final judgment which extends the life of a proceeding in which it was granted until it is either modified or revoked by the district court which issued it. South Central Bell Telephone Company v. Dempster, 303 So.2d 278 (La.App. 1st Cir.1973).
At the time of the 1963 judgment, the principle regarding res judicata was reflected in former La. C.C. art. 2286 which stated, “the authority of the thing adjudged takes place only with respect to what was the object of the judgment.” The demand of the former suit was required to be founded upon the same “cause.” Citing Planiol, the Louisiana Supreme Court in Mitchell v. Bertolla, 340 So.2d 287 (La.1976), stated: “The Cause is said to be the juridical or material fact which is the basis of the right claimed, or the defense pleaded.”
We find that the 1963 consent judgment making the injunction permanent as to Mr. Tolmas and the Parish did not involve the zoning issues for the use of the property which are now in dispute. The consent judgment resolved a dispute between Mr. Tolmas and the Parish concerning Mr. Tolmas’ right to ingress and egress from the property to Veterans. The dispute arose after Mr. Tolmas placed shells on the property to aid in accessing the property from Veterans. The preliminary injunction entered on October 18, 1962, prohibited’ Jefferson Parish from committing any act toward disturbing Mr. Tolmas’ peaceable possession of the property including his right to frontage exit and entrance between Veterans and his office. The 1963 consent judgment making the injunction permanent | largely tracked the language of the preliminary injunction and prohibited Jefferson Parish *658 from committing any act toward disturbing Mr. Tolmas’ peaceable possession of the property, including his right to frontage, entrance and exit between Veterans and his office, as said rights were enjoyed on May 14, 1962, or from any interference whatsoever to the peaceful use and enjoyment of Mr. Tolmas’ property. The injunction never addressed zoning issues or Mr. Tolmas’ right to have an office building on the property when it was zoned residential. Although the injunction uses broad language prohibiting the Parish from committing any act disturbing Mr. Tolmas’ peaceable possession of Square 1, the injunction, in the context in which it was issued, did not give Mr. Tolmas or his successors the unlimited right in perpetuity to use the property for whatever purpose they might choose. Therefore, the 1963 judgment was not founded on the same cause as the present suit and that judgment is not res judicata as to the issues involved in the present case.
The Parish argues that the valid nonconforming use of the property ended when Mr. Tolmas’ office building was demolished in 2004. La. Const. Art. 6, § 17, gives local governments broad powers to adopt regulations for land use, zoning, and historic preservation. Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287. The purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities. Redfearn v. Creppel, 455 So.2d 1356 (La.1984).
A person who purchases land with knowledge, actual or constructive, of zoning restrictions which are in effect at the time of such purchase, is |7said to have created for himself whatever hardship such restrictions entail. Sanchez v. Board of Zoning Adjustments of City of New Orleans, 488 So.2d 1277 (La.App. 4th Cir.1986), writ denied, 491 So.2d 24 (La.1986), cert. denied, 479 U.S. 963, 107 S.Ct. 461, 93 L.Ed.2d 406 (1986).
A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as “nonconforming use.” The permitted continuation of a nonconforming use is designed to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area. Redfearn v. Creppel, supra.
In 1958, the Jefferson Parish Council passed the Jefferson Parish Zoning Ordinance, Ordinance 3813, which later became Ordinance 5687. See Kuhn v. Sciortino, 483 So.2d 666 (La.App. 5th Cir.1986). The CZO was later embodied in Jefferson Parish CZO, Art. XXXVII, Sec. 40. The purpose of nonconforming use regulations is to allow nonconforming uses while upholding the integrity of the district regulations described in this ordinance by carefully guiding nonconforming uses to have as little negative impact on conforming uses as possible. Jefferson Parish CZO, Sec. 40-696.
Any lawful structure, building permit issue, or use existing on or prior to the date of adoption of Ordinance 5687; or whenever a district shall be changed by amendment to this ordinance; may be continued even though Rsuch building, structure, or use does not conform to the regulations of the district in which it is located. Jefferson Parish CZO, Sec. 40-697.
Once a nonconforming use is changed to a conforming use, the nonconforming use shall not be reestablished. Jefferson Parish CZO, Sec. 40-699(d).
The discontinuance or suspension of a nonconforming use or associated activity *659 for any reason shall constitute vacancy of a nonconforming structure, regardless of the intent of the owner or lessee of the premises to continue such nonconforming use or associated activity. Vacancy of a nonconforming for a period of one year shall terminate the nonconforming use. Jefferson Parish CZO, Sec. 40-702.
We find that Mr. Tolmas’ office building was a nonconforming use of the property which was allowed by the Parish in 1958 when it issued him a building permit, even though at that time the property had been zoned for residential use. The office building was demolished in 2004. The property appears to have been vacant since that time. Because the nonconforming use has ceased for more than one year, it has terminated. Morning Park is not entitled to make commercial use of Square 1 under the facts presently before this court. We make no decision as to Morning Park’s entitlement to a zoning variance and we do not address the merits of any zoning issue that may be raised under normal zoning procedures. Morning Park’s remedy is to seek a zoning variance through the appropriate procedures.
| «CONCLUSION
For the reasons stated above, we reverse the judgment of the trial court and dismiss Morning Park’s motion to enforce the injunction against the Parish of Jefferson. We assess all appellate and trial court costs to Morning Park, LLC.
REVERSED AND RENDERED.
SEXTON, J. (Ad Hoc) dissents with reasons.

. The fifth circuit originally decided this matter in Tolmas v. Parish of Jefferson, 2011-492 (La.App. 5th Cir.12/29/11), 80 So.3d 1260. On rehearing, the fifth circuit denied a motion to recuse a member of the appellate court panel. The Louisiana Supreme Court reversed the ruling on the motion to recuse, vacated the decision of the fifth circuit, and transferred the case to this court to be heard anew. See Tolmas v. Parish of Jefferson, 2012-0555 (La.4/27/12), 87 So.3d 855.

. The Parish's answer stated: "That plaintiff's property is residential property and the means provided for ingress and egress are more than adequate to serve the said property." However, there was no reconventional claim to enjoin the use of the property for the existing commercial activity.