SUSAN M. CHEHARDY, Judge.
 

 | sThis appeal arises following a judgment on a motion to enforce a permanent injunction against the Parish of Jefferson. The district court granted the motion and the Parish of Jefferson appeals. We reverse and render judgment in favor of the Parish.
 

 FACTS
 

 History
 

 The lawsuit originated when Oscar J. Tolmas (“Tolmas”) filed suit on May 16, 1962, against the Parish of Jefferson (“the Parish”) and various parish officials.
 
 [1]
 
 Tol-mas alleged he was the owner of a piece of property in Jefferson Parish on which he maintained an office building together with a sign advertising a subdivision known as “Cecile Park.” Tolmas asserted he had made various improvements on his property, including placing shells from the front of his office building to the shoulder of Veterans Memorial Highway (“Veterans”) to provide a means of ingress and egress from Veterans through the front of his
 
 *1262
 
 property to the parking area in front of his office building.
 

 Tolmas asserted that similar ingress and egress to and from businesses and other properties fronting on Veterans prevailed both outbound and inbound to New Orleans on Veterans, by means of shells, blacktopping, and in some instances 14paving. Tolmas, however, had received a letter from the Jefferson Parish Attorney on May 14, 1962, complaining that he had placed shells on the public right of way, making it part of his parking lot. The letter demanded that he restore the property to its former condition or the Parish would prosecute him for destroying and defacing public property.
 

 Tolmas alleged his rights to equal protection and due process were being violated by the Parish’s “flagrant discrimination” against him, depriving him of rights afforded to all other owners of property fronting on and abutting Veterans Memorial Highway. Tolmas sought a permanent injunction prohibiting the Parish and the defendant officials
 

 from disturbing petitioner in the peaceful possession of his property, including the frontage rights of entrance and exit between his office and Veterans Memorial Highway, or from lodging, accepting and/or prosecuting criminal charges of destroying or defacing public property in connection herewith, or whatever interference to the peaceful use and enjoyment of petitioner’s property by petitioner.
 

 The district court issued a preliminary injunction on October 18, 1962 that prohibited the defendants “from committing any act toward disturbing plaintiffs peaceable possession of his property ..., including his right to frontage exit and entrance between Veterans Memorial Highway and his office.”
 

 On February 7, 1963, the district court rendered judgment “with the consent of all parties,” ordering that the preliminary injunction granted on October 18, 1962 be made permanent. The judgment further ordered,
 

 [T]he permanent injunction, granted herein prohibits and enjoins the Parish of Jefferson ... from committing any act toward disturbing Oscar J. Tolmas’ peaceable possession of the property herein below described:
 

 A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the frights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, designated as Square No. 1, bounded by Veterans Memorial Highway, North Labarre Drive, Tolmas Drive and 22nd Street, and measures 200.46 feet front on Veterans Memorial Highway, 200.38 feet in width in the rear, by a depth of 558.03 feet along N. Labarre Drive and a depth of 550.46 feet on Tolmas Drive.
 

 Said possession including Oscar J. Tolmas’ right to frontage, entrance and exit between the Veterans Memorial Highway and his office, as the said rights were enjoyed on May 14, 1962, or from any interference whatsoever to the peaceful use and enjoyment of Oscar J. Tolmas’ property as hereinabove described by him.
 

 The judgment stated, “With the consent of all parties hereto, as evidenced by the document identified as PD-1, introduced and offered into evidence ... in Open Court on the 1st day of February, 1963.” Pursuant to the agreement among the parties, no appeal was taken from the judgment of February 7,1963.
 

 
 *1263
 
 Current Dispute
 

 Some 47 years later, the ease was reopened and the present issues were raised by a Motion to Enforce Permanent Injunction filed on December 16, 2010, by Morning Park, LLC (“Morning Park”), as successor-in-title to Oscar J. Tolmas.
 

 Morning Park asserted the motion concerned the Parish’s violation of the judgment dated February 7, 1963 that granted a permanent injunction in favor of Oscar J. Tolmas, Morning Park’s predecessor-in-title. Morning Park alleged that on April 28, 2004, it purchased a tract of land from Oscar J. Tolmas described as follows:
 

 A CERTAIN PIECE OR PORTION OF GROUND together with all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining situated in the Parish of Jefferson, State of Louisiana, designated as Square 1 in Cecile Park | nAddition Subdivision, created in accordance with a plan or survey by Adloe Orr, Jr. & Associates dated April 27, 1957, approved under ordinance # 3526 by the Police Jury for the Parish of Jefferson on the 1st day of July, 1957.
 

 Morning Park alleged this is the same property as described in the judgment of February 7,1963.
 

 Morning Park asserted that by virtue of the Act of Sale, all rights to the property enjoyed by Tolmas flow to Morning Park, including the use of the property for offices. Morning Park alleged that notwithstanding the 1963 judgment, the Parish had denied Morning Park’s request for a letter of clearance for use of the property as offices, by letters dated October 25, 2010, from both the Jefferson Parish Planning Department and the Jefferson Parish Department of Inspection and Code Enforcement.
 

 The letters were attached to the Motion to Enforce Permanent Injunction and made part thereof. The Planning Department letter advised that the land in question is zoned R-1A, Single Family Residential District, and directed Morning Park to present any building plans to the Jefferson Parish Department of Inspection and Code Enforcement. The letter from the Inspection and Code Enforcement Department advised that “the property in question is zoned R-1A and office use is not a permitted use of this zoning district.”
 

 Morning Park argued that in failing to grant it a clearance for use of the land as offices the Parish is in violation of the permanent injunction. Morning Park sought to enforce the permanent injunction against the Parish, restraining and enjoining the Parish from interfering with Morning Park’s use of the property, more particularly in development of Square 1 for office use.
 

 The matter came for a hearing on February 24, 2011. At the conclusion of the hearing, the district court rendered judgment in favor of Morning Park, 1 ./‘enforcing the permanent injunction against the Parish of Jefferson, barring the Parish of Jefferson from interfering with the peaceful use and possession by Morning Park, LLC, and its use of the property for offices.”
 

 In oral reasons for judgment, the court stated,
 

 All right. It appears what the Plaintiffs are requesting is the use of property for offices. It’s very specific in here.
 

 So according to what’s filed in the Record and requests of the parties, the Court is going to enforce the permanent injunction against the Parish of Jefferson barring the Parish of Jefferson from interfering with the peaceful possession of Morning Park, LLC and its use of the property for offices.
 

 
 *1264
 
 That is what was requested. That is what the Court is ordering.
 

 The judgment described the property as follows:
 

 A certain piece or portion of ground, together with all of the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, designated as Square No. 1, bounded by Veterans Memorial Highway, North Labarre Drive, Tolmas Drive and 22nd Street, and measures 200.46 feet front on Veterans Memorial Highway, 200.33 feet in width in the rear, by a depth of 558.03 feet along N. Labarre Drive and a depth of 550.46 feet on Tolmas Drive.
 

 The Parish has appealed.
 

 ARGUMENTS
 

 On appeal, the Parish contends the 1963 judgment does not grant the current owner the right to use property zoned residential for offices. The Parish asserts the issues are whether the 1963 judgment granted to the ancestor-in-title a transferable right to use Square 1, Cecile Park Addition, for offices, and whether a valid lsnonconforming commercial use of Square 1 ended when the nonconforming building was demolished in 2004.
 

 In opposition to the appeal, Morning Park asserts that the Parish has no right to bring this appeal because the Parish is challenging the terms of a consent judgment that is final. Alternatively,- Morning Park contends the district court’s ruling granting the motion to enforce the 1963 judgment was correct and was well-supported by facts in the record. Morning Park asserts the Parish’s appeal is without merit and should be denied.
 

 Although the parties attached numerous documents to their trial memo-randa, and the Parish has attached even more documents to its appellate brief, they did not introduce most of those documents into evidence. Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memo-randa do not constitute evidence and cannot be considered as such on appeal.
 
 Denoux v. Vessel Mgmt. Services, Inc.,
 
 2007-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence.
 
 Id.
 

 Hence, our review of the documentation in this case is limited to what was part of the original record or properly made part of the pleadings offered into evidence.
 

 LAW AND ANALYSIS
 

 We find the trial court erred in granting the motion to enforce the injunction.
 

 In order to interpret the original judgment of injunction, we reviewed the old portion of the record concerning the original proceedings for injunctive relief. As noted above, the permanent injunction was granted by consent of the parties, | pursuant to the agreement signed by Tol-mas and the various individual parish officials who were defendants.
 

 Exhibit PD-1, to which the judgment granting the permanent injunction referred, is a letter dated January 17, 1963 from Oscar J. Tolmas to M. Dan Hogan, President, Jefferson Parish; Harold Kytle, Parish Attorney, Jefferson Parish; and Roy Price, Special Assistant Parish Attorney, Jefferson Parish. That letter stated,
 

 In consideration of the submission by the Parish of Jefferson [and the individual defendants] ... to the permanent
 
 *1265
 
 injunction prayed for by me [in this case] ... I release and relieve Mr. M. Dan Hogan from any and all claims which I might have against him arising from any utterances alledgedly [sic] made by Mr. Hogan immediately prior to the filing of the suit mentioned herein.
 

 I will accede to this agreement only if there is a voluntary submission by the parties named above to the permanent injunction hereinabove referred to, and only if it is understood that there will be no appeal from the judgment of the Court.
 

 [signed] Oscar J. Tolmas
 

 The provisions of the above agreement between Oscar J. Tolmas and the above identified defendants will become legally binding and operative against all the parties thereto as of the date that the above referred to defendants affix their signatures hereunder, which date is to be no later than January 28, 1963.
 
 [2]
 

 Review of the original pleadings discloses no mention of zoning except in the Answer by the Parish and the individual defendants, which stated in Paragraph 18 that the property is residential. The original Petition for Injunctive Relief sought ingress and egress to and from Veterans Memorial Boulevard, as well as relief from the Parish’s threatened prosecution for “defacing and destroying” public property. Tolmas sought to prevent deprivation of “the rights afforded to all other owners of property fronting on and abutting Veterans Memorial Highway.” [ mThere is no mention of zoning in his original petition, nor of commercial versus residential use.
 

 First, we find the 1963 judgment, insofar as it forbade thé Parish “from any interference whatsoever to the peaceful use and enjoyment of Oscar J. Tolmas’ property,” was personal to Tolmas. Any right to noninterference with the peaceful use and enjoyment of Tolmas’ property did not transfer to his successor-in-title. The 1963 judgment mentions only Oscar J. Tolmas; it does not mention “his heirs, successors, and assigns.” The correspondence Exhibit PD-1 entered into the original record states, “The provisions of the above agent ... will become legally binding, and operation against all the parties thereto ... ”, indicating as well that this compromise was intended to benefit the individual, not bind the property in any legal manner. The 1963 judgment was never recorded in the mortgage and conveyance records, nor was it mentioned in the Act of Sale from Tolmas to Morning Park. The prohibition against interference with Tolmas’ “peaceable possession” of the property cannot be said to be part of the title to the property so as to transfer with the sale of the property.
 

 The prohibition against interference with peaceable possession is not a servitude. A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646. For purposes of “interference with peaceable possession” in this case, there is no ser-vient estate, so that a mere prohibition cannot be considered a servitude.
 

 We find, further, that even if the 1963 judgment in favor of Tolmas were transferable to Morning Park, Morning Park would not be entitled to commercial use of Square 1.
 

 The authority to enact zoning regulations flows from the police power of the various governmental bodies; zoning is a legislative function.
 
 Four States Real
 
 ty
 
 Co., Inc. v. City of Baton Rouge,
 
 309 So.2d 659, 672 (La.1974). The purpose of
 
 *1266
 
 zoning ordinances is to confine certain classes of buildings and uses to certain localities.
 
 Redfearn v. Creppel,
 
 455 So.2d 1356, 1359 (La.1984). Because a nonconforming use is inconsistent with that objective, it should, consistent with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity.
 
 Id.
 

 The 1963 judgment did not contemplate zoning of the property because no zoning issues were raised in Tolmas’ original petition, and no zoning issues were mentioned in the judgment. The original subdivision plan for the property designates Square 1 as “commercial.” However, that designation was not in accordance with the parish’s zoning ordinance, which had been enacted in 1958 prior to the time that Tolmas filed his action.
 

 The Comprehensive Zoning Ordinance permits continuance of nonconforming uses that existed on or prior to the date of adoption of the ordinance. Jefferson Parish Comprehensive Zoning Ordinance, Art. XXXVII, Sec. 40-697. Once a nonconforming use is changed to a conforming use, however, the nonconforming use shall not be reestablished. Jefferson Parish Comprehensive Zoning Ordinance, Art. XXXVII, Sec. 40-699(d).
 

 Where the nonconforming use, structure, or building is totally destroyed, the nonconforming use terminates as of the date of the destruction. Jefferson Parish Comprehensive Zoning Ordinance, Art. XXXVII, Sec. 40 — 701(b). Similarly, discontinuance or suspension of a nonconforming use or associated activity for any reason constitutes vacancy of a nonconforming structure, and vacancy of a nonconforming use for a period of one year shall terminate the nonconforming use. Jefferson Parish CZO, Art. XXXVII, Sec. 40-702.
 

 |12It is undisputed that the commercial building formerly used by Tolmas as an office was demolished on or about April 2, 2004, and that Morning Park purchased Square 1 from Tolmas on April 28, 2004. On May 27, 2008, Morning Park applied for a building permit to construct a parking garage and office building on Square 1. After learning that Square 1 was not zoned for commercial use, Morning Park can-celled its building permit application. Morning Park did not file the instant Motion to Enforce Injunction until December 16, 2010. This was more than two years after Morning Park withdrew its application for a building permit, more than six years after the Tolmas office building was demolished and Morning Park purchased the property.
 

 The nonconforming use for a commercial building that Tolmas enjoyed terminated when his building was destroyed. No attempt was made to timely reinstate that nonconforming use. Hence, the property remains under its designated zoning, R-1A.
 

 Morning Park apparently relied on the designation “commercial” shown on the 1957 plat of the property, which is referenced in the act of sale by which Tolmas sold the land to Morning Park. Zoning restrictions are public record, however, and a prospective purchaser of property can readily learn what zoning designation attaches to the property that the purchaser hopes to buy. We all are held to have constructive knowledge of what is in the public records.
 

 “A person who purchases land with knowledge, actual or constructive, of the zoning restrictions which are in effect at the time of such purchase, is said to have created for himself whatever hardship
 
 *1267
 
 such restrictions entail.”
 
 Sanchez v. Board of Zoning Adjustments of the City of New Orleans,
 
 488 So.2d 1277, 1279 (La.App. 4 Cir.1986), quoting Anderson,
 
 American Law of Zoning,
 
 2d Edition, Volume 3 |13§ 18.42. Morning Park’s remedy is to seek a zoning variance through the appropriate procedures to do so.
 

 DECREE
 

 For the foregoing reasons, the judgment is reversed and the Motion to Enforce Injunction is dismissed. Costs are assessed against the appellee, Morning Park, L.L.C.
 

 REVERSED AND RENDERED
 

 [1]
 

 . The officials were the Parish President, the seven members of the Parish Council, the Parish Attorney, the Director of the Department of Roads and Bridges, the Director of the Department of Public Safety, and the District Attorney, through the individuals then holding those positions.
 

 [2]
 

 . Signatures of all individual defendants followed, but the date line was not completed.