| J. CALDARERA & CO., INC. | * | NO. 2018-CA-0988 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ERNEST N. MORIAL | * | |
| EXHIBITION HALL | | FOURTH CIRCUIT |
| AUTHORITY AND MELVIN | * | |
| RODRIGUE IN HIS OFFICIAL | | STATE OF LOUISIANA |
| CAPACITY AS PRESIDENT | * * * * * * * | |
| OF THE ERNEST N. MORIAL | | |
| EXHIBITION HALL | | |
| AUTHORITY BOARD | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03204, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Edwin A. Lombard, Judge Rosemary Ledet)

LLOYD N. SHIELDS
JEFFREY K. PRATTINI
JESSICA R. DERENBECKER
SHIELDS MOTT LUND L.L.P.
650 Poydras Street
Suite 2600
New Orleans, Louisiana 70130
    COUNSEL FOR PLAINTIFF/APPELLANT


CHRISTOPHER K. LEMIEUX
JOHN W. BIHM
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, Louisiana 70163
    COUNSEL FOR INTERVENOR/APPELLEE, LANDIS CONSTRUCTION CO., LLC

THOMAS J. CAPELLA
CHRISTIAN J. RHODES
DAVID C. FLESHMAN
DAVID B. PHELPS
ROEDEL PARSONS KOCH BLACHE BALHOFF & McCOLLISTER
1515 Poydras Street
Suite 2330
New Orleans, LA 70112
    COUNSEL FOR DEFENDANT/APPELLEE


                                        **AFFIRMED**


                                    **AUGUST 7, 2019**

In this public bid law case, the plaintiff, J. Caldarera & Company, Inc. (Caldarera), appeals a trial court judgment in favor of the defendants, the Ernest N. Morial Exhibition Hall Authority (the Authority) and Melvin Rodrigue in his official capacity as President of the Earnest N. Morial Exhibition Hall Authority Board, which determined that the intervenor, Landis Construction Company, LLC, was the lowest responsive bidder and rendered judgment in favor of the defendants as to all requests for relief and ordered that any temporary or preliminary injunction be deemed no longer in effect. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In January of 2018, the Authority publicly advertised and sought bids for the Linear Park public works project No. CO0517 (the project). The project was part of ongoing enhancements to the convention center and sought the redevelopment of two lanes of traffic into a linear park to serve as an entrance up to the convention center. Five bids were received by the March 5, 2018 deadline. The bids were reviewed for compliance and were ranked as follows: 1) J. Caldarera &

Co.; 2) Landis Construction Co., LLC; 3) Roy Anderson Corp.; 4) the McDonald Group; and 5) Boh Brothers, Inc. The lowest bid was from Caldarera.

On March 7, 2018, the Authority notified Caldarera that it was the apparent low bidder. The bid documents also called for the lowest responsible bidder to submit the preliminary project schedule and the preliminary traffic plans within fourteen (14) days after the bid opening. An introductory meeting between representatives of the Authority and Caldarera took place on March 15, 2018.

On March 19, 2018, Landis filed a protest challenging the responsiveness of Caldarera's bid. Landis's chief complaint was Caldarera's alleged failure to comply with the requirements in article 5.2.1 of the bid instructions that bid bonds must be "issued by a company licensed to do business in Louisiana and who is under contract with the surety company or bond insurer as a licensed agent in this state." Landis argued that because Caldarera's agent is a Connecticut resident, Caldarera's bid was nonresponsive. Also, on March 19, 2018, the Authority's facilities and construction committee voted to move forward with Caldarera subject to review and analysis of the protest and, if the protest had merit, then to move forward with the next responsive bidder. On March 20, 2018, the Authority's finance and audit committee also voted to move forward with Caldarera subject to review and analysis of Landis's protest and, if the protest was determined to have merit, then to move forward with the next lowest responsible and responsive bidder.

2

The Authority provided Caldarera with a copy of the Landis protest and an opportunity to formally respond on March 21, 2018. Caldarera submitted a formal witness response to the Landis protest to the Authority on March 22, 2018.

During the Authority's March 28, 2018 meeting, the board unanimously voted to enter executive session pursuant to La. R.S. 42:17(A)(2) to discuss and consider prospective litigation surrounding the bid protest. Prior to the meeting, the Authority's written public notice of its March 28, 2018 meeting of the board of commissioners included the following item on the agenda: "IV. Executive Session – Discussion and consideration of prospective litigation pursuant to La. R.S. 42:17(A)(2) concerning Landis Construction Co., L.L.C.'s Linear Park bid protest." After returning to open session, the board unanimously voted on a properly motioned and seconded motion to award the contract to Landis as the lowest responsive and responsible bidder. The Authority and Landis then executed the contract.

On March 29, 2018, the Authority notified Caldarera that its bid was deemed non-responsive because Calderera failed to comply with the requirements of article 5.2.1 of the biding documents.[1] On April 2, 2018, Caldarera filed a petition for temporary restraining order, preliminary and permanent injunctive relief, mandamus, and declaratory judgment. The trial court granted a TRO on April 3, 2018. Landis filed its petition for intervention on April 5, 2018. On April 10,

---

[1] On April 2, 2018, the Authority notified TMG and the other bidders that their bids were not the lowest responsive bid. On April 9, 2018, TMG filed a petition for intervention. Following a bench trial where the trial court ruled against it, TMG did not appeal.

2018, the trial court extended the April 3, 2018 TRO until the end of the day on April 18, 2018.

A hearing on Caldarera's petition for preliminary injunction took place on April 18, 2018. Following the hearing, the trial court granted a preliminary injunction pending trial on the merits. Caldarera also filed its first supplemental and amending petition to institute enforcement proceedings pursuant to open meetings law on April 18, 2018.

On April 25, 2018, the trial court issued a judgment granting Caldarera's request for preliminary injunctive relief. The trial court enjoined the Authority from proceeding in any manner with the project pending trial on Caldarera's request for permanent injunction. Caldarera filed its second supplemental and amending petition on April 26, 2018.

On May 16, 2018, a bench trial was held on Caldarera's petition for temporary restraining order, preliminary and permanent injunction, and declaratory judgment, as well as Caldarera's first and second supplemental and amending petitions. After considering the evidence, law, and oral and written arguments, the trial court ruled against Caldarera and for the Authority on all requests for relief. On May 31, 2018, the trial court issued a written judgment finding Landis to be the "lowest responsible and responsive bidder who bid according to the bidding documents as advertised for the Linear Park Project." The trial court rendered judgment against Caldarera and in the Authority's favor as to: (1) "all requests for relief made in" Caldarera's first supplemental and amending petition to institute

4

enforcement proceedings pursuant to open meetings law; and (2) "the requests for injunctive relief, mandamus, and declaratory judgment" made in Caldarera's petition for temporary restraining order, preliminary and permanent injunctive relief, mandamus, and declaratory judgment and second supplemental and amending petition.

Caldarera filed a motion for new trial on June 4, 2018. On July 12, 2018, at a hearing on a motion for new trial, the trial court denied the motion in open court. The trial court issued a written judgment denying Caldarera's motion for new trial on July 20, 2018. On August 21, 2018, Caldarera filed its motion and order for the instant appeal.

**DISCUSSION**

On appeal Caldarera raises the following assignments of error: 1) the trial court committed reversible error when it failed to rule that Caldarera's bid complied with the instructions to bidders and instead rejected Caldarera's request for permanent injunction and mandamus;[2] 2) the trial court committed reversible error when it failed to find that the convention center's favoritism to Landis violated the public bid law; and 3) the trial court committed reversible error when it ruled that the convention center did not violate the Louisiana open meetings law.

---

[2] The appellant further breaks down its first assignment of error as follows: a) the trial court committed reversible error by not finding that Caldarera's bid complied with the requirements of the instructions to bidders; b) the trial court committed reversible error when it ignored portions of the instructions to bidders that were legislatively overruled long ago and were unenforceable; c) the trial court committed reversible error when it failed to find that Caldarera was not required to submit schedules or other documents under the plain language of the instructions to bidders; and d) the trial court committed reversible error when it failed to recognize the ambiguities in the instructions to bidders language concerning the time for a "responsible bidder" to submit schedules.

In its first assignment of error, Caldarera contends that the trial court committed reversible error when it did not find that Caldarera's bid complied with the instructions to bidders and rejected Caaldarera's request for permanent injunction and mandamus.

Louisiana vests public bodies awarding contracts with discretion subject to judicial review. Haughton Elevator Division v. State, Through Division of Administration, 367 So.2d 1161, 1165 (La. 1979). "Courts will not substitute their judgment for the good-faith judgment of the administrative agency." Id. This distinction "must be exercised in a fair and legal manner and not arbitrarily." Id. A public body's "reasonable, good faith interpretation of its own specifications should not be disturbed by a court whose views might be different." J.W. Rombach, Inc. v. Parish of Jefferson, 95-829, p. 13 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305, 1311.

While factual determinations are generally reviewed for manifest error, and questions of law *de novo*, a ruling on a declaratory judgment is reviewed for abuse of discretion. The scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment. Phillips' Bar & Rest., Inc. v. City of New Orleans, 12-1396, pp. 17-18 (La.App. 4 Cir. 4/24/13), 116 So.3d 92, 104. Likewise, an appellate court's review of a district court's denial of a request for mandamus is under the abuse of discretion standard. *See* State through Morrell v. City of New Orleans through Landrieu, 17-0110, p. 12 (La.App. 4 Cir. 12/21/17), 234 So.3d

6

1071, 1079-80; writ denied, 18-0116 (La. 3/9/18), 237 So.3d 1192. An appellate court will grant a writ of mandamus only when there is a usurpation of judicial power or clear abuse of discretion. Wallace C. Drennan, Inc. v. Sewerage & Water Board of New Orleans, 00-1146, pp. 3-4 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167, 1171.

In the instant case, following a full evidentiary hearing, the trial court found that Caldarera did not satisfy the bid bond requirements under article 5.2.1 of the bidding documents. The trial court found that Caldarera did not comply with "either of the options" of the article 5.2.1. The first interpretation is that the bid bonds were required to be issued by either (1) a company licensed to do business in Louisiana and who is under contract with the surety company; or (2) a bond issuer as a licensed agent in this state and residing in this state.[3] The second interpretation is that article 5.2.1 required the bid bonds to be issued by a company that is (1) licensed to do business in Louisiana and (2) under contract with either a surety company or bond issuer licensed in and residing in Louisiana to serve as its local agent.

Louisiana Public Bid Law mandates that all public work to be done by a public entity shall be advertised and let by contract to the "lowest responsible and responsive bidder who bid according to the bidding documents as advertised." *See* La. R.S. 38:2212(A)(1)(a). La. R.S. 38:2212(B)(1) prohibits the authority from waiving requirements stated in its bidding documents. As the Louisiana Supreme

---

[3] This is the interpretation adopted and argued by both Caldarera and Landis.

7

Court has stated: "'[W]hen a public entity elects to place certain requirements in the advertisement for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date.'" Hamp's Constr., L.L.C. v. City of New Orleans, 05-0489 p. 9 (La. 2/22/06), 924 So.2d 104, 110 (citing Broadmoor, LLC v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211, 04-0212 (La. 3/18/04), 867 So.2d 651). As such, the authority's interpretation of its own bid requirements was reasonable, not arbitrary and capricious.

The trial court also found Caldarera's bid nonresponsive due to its failure to submit its 14-day documents as required by article 7.1.6 of the bidding documents. Article 7.1.6 states: "The lowest responsible bidder shall submit to the Architect and the Owner within fourteen (14) calendar days of bid opening a preliminary project schedule in accordance with specification section 013200, …" Caldarera, however, did not submit the preliminary project schedule and preliminary traffic plans by March 19, 2018 – 14 days after the bid opening on March 5, 2018. Accordingly, the trial court's finding was not in error.

Because we find the trial court did not err when it found that Caldarera's bid did not comply with the instructions to bidders, the trial court did not abuse its discretion when it rejected Caldarera's request for permanent injunction and mandamus.

In its second assignment of error, Caldarera argues that the public bid law was violated by "favoritism," but its only alleged evidence is the Authority's invocation of the attorney-client privilege on May 4, 2018.

Caldarera filed this lawsuit on April 2, 2018. Soon thereafter, Landis intervened and was aligned with the interest of the Authority. On April 26, 2018, Caldarera issued a subpoena, requesting communications between Landis and the Authority's attorneys, exchanged between March 19, 2018 and "present." When the Authority responded, "present" was May 4, 2018. By that time, the Authority and Landis were common-interest litigants.

According to Louisiana Code of Evidence Article 506(B)(3), "[a] client has a privilege … when the communication is … by the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest." Therefore, the Authority and Landis are entitled to claim an Article 506(B)(3) privilege. The claim of privilege in no way shows favoritism. The request in Caldarera's subpoena sought the Authority's litigation strategy prior to trial. Accordingly, the trial court's findings of no public bid law violation concerning Caldarera's allegation of "favoritism" is not manifestly erroneous.

Caldarera's final assignment of error is that the trial court erred when it found that the Authority awarded the contract to Landis in a public meeting and not executive session. The trial court ruled that "[t]he authority acted in compliance with the Open Meeting Law and that the decision to award the contract

9

to Landis was not made in Executive Session but rather was made and voted on in Open Session via unanimous vote after being properly motioned and seconded."

The Open Meetings Law (La. R.S. 42:11, *et seq.*) requires that "[e]very meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:16, 17, or 18." La. R.S. 42:14(A). La. R.S. 42:16 establishes an exception to the open meetings requirement and describes the method by which a public body may properly hold executive session:

> A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:19, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:17; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:17 shall be construed to require that any meeting to be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of this Chapter.

La. R.S. 42:17(A) lists the permissible reasons for which a public body may hold an executive session, providing, in pertinent part:

> A public body may hold an executive session pursuant to La. R.S. 42:16 for one or more of the following reasons:
>
> . . .
>
> (2) Strategy sessions or negotiations with respect to collective bargaining, prospective litigation after formal written demand, or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body.

If a public entity intends to hold an executive session pursuant to La. R.S. 42:17(A)(2), it must include certain information on its publicly noticed agenda pursuant to La. R.S. 42:19(A)(1)(b)(iii), which provides pertinently as follows:

Following the above information there shall also be attached to the written public notice of the meeting, whether or not such matters will be discussed in an executive session held pursuant to R.S. 42:17(A)(2):

\*\*\*

(bb) A statement identifying the parties involved and reasonably identifying the subject matter of any prospective litigation for which formal written demand has been made that is to be considered at the meeting.

In the instant case, the Authority held an executive session at the March 28, 2018 board meeting and: (1) held it for the permitted purpose of discussing the then prospective litigation (the litigation involving this case) pursuant to La. R.S. 42:17(A)(2); (2) took no formal or binding action during the executive session; and (3) complied with all procedural requirements under the Open Meetings Law. Furhermore, the Authority's decision to award the contract to Landis was not made in executive session – it was made in open session by unanimous vote after being properly motioned and seconded. Accordingly, the executive session on March 28, 2018 was held in compliance with the Open Meetings Law, and we find no error in the trial court's finding.

**CONCLUSION**

Based on the above and foregoing reasons, we affirm the trial court's judgment in favor of the defendants as to all requests for relief and its ordering that any temporary or preliminary injunctive relief be deemed no longer in effect.

**AFFIRMED**

11